UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FCS ADVISORS LLC D/B/A BREVET CAPITAL ADVISORS,

Plaintiff,

25-cv-8347 (PKC)

-against-

OPINION AND ORDER

DAN BRUNSTETTER,

Defendant.
----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff FCS Advisors LLC, d/b/a Brevet Capital Advisors ("Brevet"), brings two contractual claims against defendant Dan Brunstetter who at the relevant time was CEO of Precision Devices LLC ("Precision Devices"). Non-party Precision Devices is alleged to be in breach of a financing transaction with Brevet. Both contract claims against Brunstetter arise under the so-called Validity Agreement, a separate agreement between Brunstetter and Brevet entered into at or about the time of the agreement between Precision Devices and Brevet.

For reasons to be explained, the Court concludes that Second Amended Complaint ("SAC") plausibly alleges the Second Cause of Action for "contractual indemnification" under the Validity Agreement. The Court concludes that the First Cause of Action that refers to no specific provision of the Validity Agreement is subsumed with, and redundant of, the Second Cause of Action. The motion to dismiss will be granted as to the First Cause of Action and will be denied as to the Second Cause of Action.

BACKGROUND

For purposes of the motion, the Court accepts the Complaint's well-pleaded allegations as true and draws all reasonable inferences in favor of the non-movant plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).

During the COVID-19 pandemic, Congress passed the legislation to provide eligible employers with tax credits call Employee Retention Credits ("ERC"). (SAC, ECF 34 ¶ 17.) Employers could receive credits by seeking an IRS refund on previously paid taxes by filing amended tax returns. (Id. ¶ 18.)

Because businesses seeking ERC refunds often faced lengthy wait times, Brevet purchased Employee Retention Credit Accounts ("ERC Accounts") from businesses and provided them with immediate cash in exchange for a finance fee and a transfer of the right to receive the ERC refunds from the IRS. (Id. ¶ 19.)

On June 17, 2022, Brevet and Precision Devices LLC ("Precision Devices") entered into a Receivables Purchase Agreement ("Purchase Agreement") (ECF 34-1 at 2–8), and Brevet and Brunstetter, then-CEO of Precision Devices, entered into a Validity Agreement (ECF 34-1 at 11–12). (Id. ¶ 20.) Brevet purchased three ERC Accounts from Precision Devices for $480,980.48. The total ERC claim from these three accounts was $534,422.76. (Id. ¶ 28.)

On the same day, at the direction of Precision Devices, Brevet paid a third party the sum of $21,721.38, with the balance of the purchase price of $405,816.83 paid to Precision Devices. (Id. ¶ 29.)

At the same time, Brevet and Brunstetter entered into a Validity Agreement, whereby Brunstetter agreed to be personally "liable for claims arising out of any such Breach"

and to "indemnify [Brevet] and save [Brevet] free and harmless from any damage loss, claim or liability" of Precision Devices' obligations under the Purchase Agreement. (Id. ¶ 40; ECF 34-1 at 11–12)

In or around May 2022, Precision Devices instructed the IRS to direct tax refunds to its own bank account rather than Brevet's bank account. (ECF 34 ¶ 48.) In late 2024, Precision Devices stopped responding to Brevet's requests for information regarding these refunds. (Id. ¶ 50.) Precision Devices has allegedly received at least $533,792.76 from the IRS in its ERC Accounts, of which it has paid Brevet $260,571.49. (Id. ¶¶ 52–53.) But Precision Devices has failed to remit the remaining balance to Brevet. (Id. ¶ 54.) These actions are allegedly in violation of the Purchase Agreement. (Id. ¶¶ 48–56.)[1]

Brunstetter has also failed to pay Brevet any losses stemming from the Purchase Agreement, or to indemnify Brevet the amounts due from Precision Devices under the Purchase Agreement. (Id. ¶ 57.) These actions are allegedly in breach of the Validity Agreement. (Id.)

In the initial complaint filed in this Court, Brevet named Precision Devices and Brunstetter as defendants. (ECF 1.) However, Precision Devices was later dropped as a defendant to keep complete diversity intact. (ECF 33.)

## DISCUSSION

### I. Standard on a Motion to Dismiss.

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint. The test of a claim's 'substantive merits' is 'reserved for the summary judgment

[1] Plaintiff alleges that Precision Devices' instruction to the IRS to direct tax refunds to its own bank account rather than Brevet's bank account is a breach of the Purchase Agreement, (ECF 34 ¶ 49), even though this allegedly occurred in May 2022, one month before the closing pursuant to the Purchase Agreement.

procedure, governed by [Rule] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" Goel v. Bunge, Ltd., 820 F.3d 554, 558-59 (2d Cir. 2016) (quoting Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)) (citation omitted).

Rule 12(b)(6), Fed. R. Civ. P., requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. at 678. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll International, 231 F.3d 82, 86 (2d Cir. 2000)).

A court reviewing a motion to dismiss "take[s] no account of [the complaint's] basis in evidence" and "may review only a narrow universe of materials." Goel, 820 F.3d at 559.

Such materials include documents incorporated in the complaint, matters of which judicial notice may be taken, and documents that are "integral" to the complaint, even if they are not expressly incorporated. Id.; see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (stating that a document is "integral" to a complaint where the complaint "relies heavily upon its terms and effect"). On this motion, the Court may consider the exhibits to the Second Amended Complaint ("SAC") that are incorporated into the pleading, which include the Purchase Agreement and the Validity Agreement.

## II. The SAC Plausibly Alleges That Brunstetter is Liable to Brevet under the Validity Agreement.

Because the SAC invokes this Court's diversity jurisdiction, the Court will apply New York choice of law principles. Here, the Validity Agreement between Brevet and Brunstetter explicitly contains a New York choice of law provision. (ECF 34-1 at 11 ¶ 9 ("This Validity Agreement shall be governed by and construed in accordance with the laws of the State of New York.")) So, New York substantive law governs these contract-based claims. See N.Y. Gen. Oblig. L. § 5-1401; Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) ("New York law gives full effect to parties' choice-of-law provisions . . . .").

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted); see Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

The SAC adequately alleges the formation of a contract between Brevet and Brunstetter. (ECF 34-1, 11–12, see also ECF 34 ¶ 68 ("The Validity Agreement accompanying

the Purchase Agreement between Brevet and Precision is a valid and existing contract between Brevet, on the one hand, and Defendant Brunstetter as Validity Guarantor on the other.”))

The SAC also adequately alleges Brevet’s performance of contractual obligations. (See, e.g., id. ¶ 29 (“Brevet effected the purchase of the Precision Devices Purchased Accounts . . . by (1) paying [the third-party] Invoice on Precision Devices’ behalf and at Precision Devices’ direction and (2) wiring the remaining Net Proceeds of $405,816.83 to Precision Devices.”), ¶ 69 (“Plaintiff performed all of its obligations under the . . . Validity Agreement.”), ECF 34-1 at 11 (“Pursuant to this [Validity Agreement], dated as of June 17th, 2022 for valuable consideration and to induce Brevet Capital Advisors to enter into the Agreement, the undersigned [Brunstetter] . . . agrees as follows”) (emphasis added)).

Brevet alleges Brunstetter’s failure to perform under two contract-based claims against him, both arising from the Validity Agreement. The Validity Agreement is an agreement between Brevet and Brunstetter, identified as a “Validity Guarantor” — the primary obligor. (Validity Agreement, ¶ 3.) The Validity Agreement does not require Brevet to seek recovery against Precision Devices before proceeding against Brunstetter.

The First Claim for Relief makes the conclusory allegation that “[p]ursuant to the Validity Agreement, Brunstetter as Validity Guarantor is directly liable for claims against Precision Devices, including any amounts Precision Devices has failed to pay under the Purchase Agreement.” (SAC ¶ 70; see also SAC ¶¶ 71–72.) Scrutiny of the Validity Agreement reveals no such provision that in express terms renders Brunstetter directly liable for any claims against Precision Devices.

The Second Claim for Relief cites paragraphs 2 and 4 of Validity Agreement titled “REIMBURSEMENTS; INDEMNIFICATION.” (SAC ¶¶ 76-77.) In its memorandum,

Brevet seizes on a phrase in the last sentence of paragraph 2, which states that "each Validity Guarantor hereby agrees . . . to be liable for claims arising out of such Breach," to support its theory that "Brunstetter expressly agreed "to be liable for claims arising out of any . . . Breach" of the Purchase Agreement by Precision." (ECF 39 at 13.) But "Breach" is a defined term appearing at the end of list of occurrences giving rise to the liability of the Validity Guarantor, namely Brunstetter. In relevant part, "[e]ach Validity Guarantor," which in this case is Brunstetter, agrees to:

> [I]indemnify [Brevet] and save [Brevet] free and harmless from any damage, loss, claim or liability which [Brevet] may sustain or incur as a result of
>
> [1] any breach of the warranties or covenants set forth herein . . ., or
>
> [2] [Precision Devices] or any affiliate or subsidiary, . . . failing or refusing, after the occurrence and during the continuance of any Event of Default under any of the [Purchase Agreement], to comply with the provisions of the [Purchase Agreement] . . .
>
> (any and all of the foregoing, individually and collectively, as the context may require, being a "Breach").

(Validity Agreement, ¶ 2; reformatted)

In paragraph 1 of the Validity Agreement, Brunstetter "unconditionally . . . warrants and covenants" that Precision Devices "will not finance, sell, transfer, pledge or give security interest in any of its Accounts or other Collateral to any Person other than [Brevet]." (Validity Agreement, ¶ 1.) The SAC alleges that Precision Devices instructed the IRS to direct tax refunds to its own bank account, (SAC ¶ 48), and has allegedly failed to send IRS payments to Brevet. (Id. ¶¶ 52–53.) These actions are plausibly alleged to breach the foregoing

"warrant[y] and "covenant[]" made by Brunstetter in paragraph 1 of the Validity Agreement and thus give rise to an obligation to indemnify under circumstance [1] quoted above.

The SAC also plausibly alleges a claim under [2] above. It alleges an "Event of Default" under the Purchase Agreement and that thereafter Precision Devices has failed to comply with the Purchase Agreement by failing to make required payments to Brevet. (SAC ¶¶ 56, 60-64.)

"When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989). "The promise [to indemnify] should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." Id. at 491–92. Affording the Validity Agreement's indemnification provision the required strict construction, it is "clearly implied" that Brunstetter indemnified Brevet for "damage" and "loss" it sustained as a result of the defined "Breach[es]" outlined above.

Brunstetter's proposed construction of the Validity Agreement as only guaranteeing the validity of the agreements, representations and warranties of Precision Devices, (ECF 42 at 5), is without merit. Brunstetter, as "Validity Guarantor," expressly "covenants" that Precision Decision will act or refrain from acting in a certain manner. He was CEO of Precision Devices and free in his individual capacity to make such a contractual promise as an inducement to Brevet to engage in the transaction with Precision Devices. See Covenant, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A formal agreement or promise, usu[ally] in a contract or deed, to do or not do a particular act; a compact or stipulation.")

Brunstetter also asserts that the indemnification provision in the Validity Agreement only covers a claim by a third party causing a loss to Brevet. (ECF 42 at 10.) In relation to the Validity Agreement, Precision Devices is a third party, and the plain reading of the Validity Agreement is that Brunstetter is indemnifying Brevet and holding it harmless for losses stemming from certain specified actions or inactions of Precision Devices.

For the reasons above, the SAC plausibly alleges that Brunstetter has failed to perform under the indemnity provisions of the Validity Agreement. (See, e.g., ECF 34 ¶ 71 ("Brunstetter has breached his obligations as Validity Guarantor under the Validity Agreement . . . ."), ¶ 72 (same)).

Finally, the SAC alleges damages. (See id. ¶ 64 ("As of the date of this filing, Brunstetter has failed and refused to make payment to or otherwise indemnify Brevet."), ¶ 66 ("Brunstetter owes [not less than $326,068.73], under the clear provisions of the Validity Guaranty."), ¶ 74 ("As a result of the foregoing, Plaintiff has been damaged . . . not less than USD $326,068.73 . . . plus attorneys' fees and costs of not less than $35,191.80 . . . ."))

The Court also concludes that the SAC has plausibly alleged Brunstetter's liability for Brevet's attorneys' fees in enforcing the Validity Agreement. (SAC ¶ 79.) "Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." Hooper Associates, 74 N.Y.2d at 492 (emphasis added). The "unmistakably clear" standard does not mean the parties must "say it clearly and specifically" or it's not covered at all. In re Refco Sec. Litig., 890 F. Supp. 2d 332, 341 (S.D.N.Y. 2012) (Rakoff, J.). Instead, the

standard "amounts to a rebuttable presumption against a finding of indemnification of attorney fees in a suit between the contracting parties." Id.

It is "unmistakably clear" that "each Validity Guarantor" agreed to "pay reasonable attorneys' fees and all other costs and expenses incurred by [Brevet] in enforcing this Validity Agreement and in any action or proceedings arising out of or relating to this Validity Agreement." (ECF 34-1 at 11 ¶ 7.) Brunstetter, as the only Validity Guarantor, is potentially liable under this provision for the fees and costs in preparing and pursuing the claims asserted in this action.

The claim alleged in the First Cause of Action, the general breach of contract claim, arises from the same facts and same Validity Agreement as the Second Cause of Action, which expressly invokes the indemnity provision of the Validity Agreement. The First Cause of Action is subsumed within the Second Cause of Action. See TRE Manhattan Ave. LLC v. Capital One, N.A., 21-cv-5714 (VEC), 2022 WL 2901402, at *4–5 (S.D.N.Y. July 22, 2022) (denying leave to divide a single breach of contract claim into three claims for relief); see also Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339, 341 (2d Cir. 1963) (treating three purported causes of action for breach of contract as single "claim" for the purposes of Rule 54(b), Fed. R. Civ. P.). So, the First Cause of Action will be dismissed, and the Second Cause of Action will stand.

CONCLUSION

The Clerk shall deem the Second Amend Complaint filed with leave of Court. (ECF 34.) The motion to dismiss the Second Amended Complaint is GRANTED as to the First

Cause of Action and DENIED as to the Second Cause of Action. The parties shall confer and submit a Case Management Plan and proposed Scheduling Order by October 28, 2026.

The Clerk is directed to terminate the motion. (ECF 37.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 14, 2026